**Janice CLARK, et al.**

v.

**Charles "Buddy" ROEMER, et al.**

**Civ. A. No. 86–435–A.**

United States District Court, M.D. Louisiana.

Nov. 2, 1990.

Ernest L. Johnson, T. Richardson Bobb, Baton Rouge, La., Robert McDuff, Lawyer's Committee for Civil Rights Under Law, Washington, D.C., Ulysses Thibodeaux, Newman & Thibodeaux, Lake Charles, La., for plaintiffs.

Kenneth C. DeJean, Roy Mongrue, Staff Atty., Louisiana Dept. of Justice, Baton Rouge, La., Robert G. Pugh, Robert G. Pugh, Jr., Pugh & Pugh, Shreveport, La., for Charles "Buddy" Roemer, Gov. of La., William J. Guste, Jr., Atty. Gen. of La., Fox McKeithen, Sec. of State of La.

Michael H. Rubin, Christine Peck, Rubin, Curry, Colvin & Joseph, Baton Rouge, La., for Louisiana Dist. Judges Ass'n.

Fred J. Cassibry, Jan T. Van Loon, Sandra A. Vujnovich, Brook, Morial, Cassibry, Fraiche & Pizza, New Orleans, La., for Orleans Parish Trial Judges Ass'n.

WRITTEN REASONS ON MOTION TO DISSOLVE INJUNCTION

JOHN V. PARKER, Chief Judge.

On September 28, 1990, the United States Court of Appeals for the Fifth Circuit rendered an en banc decision in *League of United Latin American Citizens v. Clements*, 914 F.2d 620, a case involving a challenge to at-large election of Texas trial judges. The majority opinion held that the 1982 amendment to Section 2 of the Voting Rights Act (42 U.S.C. § 1973) providing for a "results" test method of proving vote dilution claims does not apply to judicial elections. The Fifth Circuit's prior decision in *Chisom v. Edwards*, 839 F.2d 1056 (5th Cir.1988), a case involving a challenge to at-large election of justices of the Supreme Court of Louisiana, was specifically overruled by name.

This court, as it was bound to do,[1] followed *Chisom* and found that plaintiffs had proven Section 2 violations using the "results" test in elections in some Louisiana court of appeal and district judgeships and accordingly enjoined judicial elections in certain district and appellate courts in this State. See *Clark v. Edwards*, 725 F.Supp. 285 (M.D.La.1988). The court then called upon the Louisiana Legislature to fashion a remedy for the violations of federal law. Approximately one year was consumed in efforts by the Louisiana authorities which ultimately proved futile when the people of the state voted against a proposed amendment to the Louisiana Constitution.

Plaintiffs thereupon moved for a hearing upon a judicial remedy and a full-blown trial was held. The court issued additional findings of fact and conclusions of law but withheld final judgment pending a decision by the Court of Appeals in *LULAC*.

The system of at-large districts utilized by Louisiana in judicial elections is almost identical to that of Texas which *LULAC* considered. Although *LULAC* deals only

1. "[O]nce an appellate court has decided an issue in a particular case both the District Court and the Court of Appeals should be bound by that decision in any subsequent proceeding in the same case. . . . unless . . . controlling authority has since made a contrary decision of law applicable to the issue." (citations omitted); *White v. Murtha*, 377 F.2d 428, 431–32 (5th Cir.1967).

with trial (district) judges, its reasoning clearly extends to court of appeal judges as well. *LULAC*, which this court is now bound to follow, *White v. Murtha, supra,* unquestionably vitiates the prior rulings of this court based upon the Fifth Circuit's earlier teaching of *Chisom*. Accordingly, the injunction must be vacated as to all judicial elections, courts of appeal as well as district courts.

Coincidentally, the *LULAC* decision was released on September 28, 1990 while the three-judge court was conducting a hearing in this matter relative to alleged violations of Section 5 of the Voting Rights Act (42 U.S.C. § 1973c) in certain judicial districts.[2] After the three-judge court recessed, this court heard oral argument as to the effect that *LULAC* had on plaintiffs' Section 2 claims. The court indicated that it would vacate the injunction as to all districts because under the new teaching of *LULAC*, there could be no federal violation in any district. The elections having already been delayed by court order, the court was chiefly concerned that the elections should go forward as fairly and as rapidly as possible and with the least expense to the State. Consequently, the court further indicated that qualification would commence on Wednesday, October 3rd and continue through Friday, October 5th,[3] and the elections would be conducted on November 6th, which is the next regularly scheduled election day, with runoff elections, if needed, on December 8.

On October 1, 1990, the Governor of Louisiana and the Louisiana District Judges Association followed up with a written motion "to dissolve injunction." This matter was heard on an expedited basis on October 2, 1990. Counsel for plaintiffs raised questions relating to the jurisdiction of this court to order the elections to go forward and the fairness of setting qualification dates with relatively little notice to potential judicial candidates. After hearing extensive arguments and some testimony, the court granted the motion to dissolve the injunction as to all trial and appellate court districts which had been found in violation of Section 2 and the court entered an order to that effect. The court now supplements its oral reasons.

As the court initially understood plaintiff's jurisdictional argument, plaintiffs contended that the court had no authority to act beyond vacating the injunction. However, as the hearing progressed, plaintiffs' jurisdictional challenge was either refined or merged with the secondary argument of fairness. Essentially, plaintiffs argued that the court should (or could) not set qualification and election dates on a time schedule that was shorter than that provided by state election laws. Plaintiffs presented testimony relating to the obvious hardships placed on potential candidates when faced with only a few days notice of the qualification period. There is little doubt that some persons attempting to enter the political arena upon short notice do face disadvantages, financially and otherwise.

Defendants argued that as a matter of equity the court not only had the power to vacate the injunction but was authorized to make such orders as may be necessary to return the parties to their original positions or as closely thereto as possible. The Louisiana District Judges Association presented testimony to establish that incumbents and others already in the political arena would be ready to qualify for judicial offices if qualifying opened on October 3rd.

The year 1990 is the scheduled election year for virtually all Louisiana district, family court and court of appeal judges. The primary election date called for by Louisiana law is October 6. The general election fixed by state law is November 6. Most terms of office expire December 31, 1990. Defendants argued that if the elec-

---

**2.** Section 5 provides that in some states and localities, no change in election practices may be enforced without a declaratory judgment from the United States District Court for the District of Columbia or "preclearance" by the United States Attorney General.

**3.** The attorney representing the Secretary of State indicated that if the elections were to be held on November 6th qualification would have to be held no later than October 3rd through 5th.

tions were not held prior to January 1, 1991, the state judiciary would likely be further disrupted by lawsuits challenging authority to sit past the expiration of the term of office. It also became apparent that in the absence of an order of this court, the elections could not be held until the gubernatorial primary of October 1991.

The court agrees with defendants that it has the authority,[4] in vacating the injunction, to return the parties as closely as possible to the positions they would have maintained had the injunction not issued. It is clear, however, that there is no ideal solution and the court must balance the equities involved.

Although notice of the qualification period is short, it is not unprecedented in Louisiana. In *Jones v. State of Louisiana,* 336 So.2d 59 (La.App. 1st Cir.1976) writ denied 336 So.2d 515, the court considered a qualification period established in an act of the Legislature creating additional judgeships. The act became effective upon signature of the governor on June 30, 1976. The qualification period was July 2, 3, 4 and 5. The court approved the short notice.

The court finds that it is in the public interest that the elections proceed on November 6th based upon cost and time considerations. Significantly, all members of the electorate are not potential candidates. Only lawyers possessing the state specified qualifications may become candidates and without doubt lawyers and judges who are interested in becoming candidates have followed these proceedings closely and will be aware of the qualification period and election date.

Additionally, it is important that there be the least disruption of judicial workload as possible. Further delay could create uncertainties as to judicial dockets and possibly result in legal challenges to individual decisions made after January 1st. While the court recognizes that some potential candidates for these offices may be disadvantaged by the short notice provided, the court finds that their interests must yield to the more important public interest of legitimacy and stability of the state judi-

ciary. Doubt as to the right to hold office of state judges must be avoided if at all possible.

---

**4.** One source of such authority is the all writs statute, 28 U.S.C. § 1651.